UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ANNETTE HAYNES, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART, )<br>COMMISSIONER OF )<br>SOCIAL SECURITY, )<br>)<br>Defendant. ) | Cause No. 3:04-CV-772-AS |

**MEMORANDUM AND ORDER**

Plaintiff, Annette Haynes ("Plaintiff"), appeals the denial of her application for Social Security Disability Income Benefits ("DIB"). She challenges the Administrative Law Judge's ("ALJ") finding that she was not disabled because she retained the capacity to perform a range of sedentary work activity, that accommodated alternating between sitting and standing positions, and restrictions against exposure to fumes, odors, gases, poor ventilation, and temperature extremes (Tr. 17).

Plaintiff applied for DIB on February 13, 2001, alleging an onset date of February 12, 2001. Her application was denied initially and on reconsideration (Tr. 360-63). An ALJ held a hearing at which Plaintiff, who was represented by an attorney, and a vocational expert (VE) testified (Tr. 20). The ALJ considered the case de novo and on February 5, 2003 found that Plaintiff was not disabled because he retained the residual functional capacity to perform light exertional work (Tr. 19-21). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on November 19, 2004. Plaintiff now seeks judicial review of the

Commissioner's final decision under authority of 42 U.S.C. § 405(g).

## I. APPLICABLE LEGAL STANDARDS

**A.    Disability Standard**

The Social Security Administration ("SSA") has adopted a sequential five-step test for determining whether the claimant is disabled. Under this test, the ALJ must determine:

1. Whether the claimant is currently working;

2. If not, whether the claimant has a severe impairment;[1]

3. If so, whether the claimant's impairment meets or equals one of the impairments listed in SSA regulations as being presumptively disabling;[2]

4. If not, whether the claimant retains the residual functional capacity ("RFC") to perform her past relevant work; and

5. If not, whether the claimant can make the adjustment to other work.

*Young v. Barnhart*, 362, F.3d 995, 1000 (7th Cir. 2004).

An affirmative answer at any step leads either to the next step, or, at steps three and five, to a finding that the claimant is disabled. A negative answer at any point, other than step three, ends the inquiry and leads to a determination that the claimant is not disabled. The claimant carries the burden of producing evidence at steps one through four, but if she reaches step five, the burden shifts to the SSA to establish that the claimant is capable of performing other work in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

---

[1] An impairment is "severe" if it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520©; 1521(a).

[2] These presumptively disabling impairments are compiled in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (i.e., "the Listings").

2

**B.     Standard of Review of ALJ's Decision**

Judicial review of the Commissioner's decision is authorized by 42 U.S.C. § 405(g). Section 205(g) provides that the findings of the Commissioner are conclusive if supported by substantial evidence. The Commissioner has a duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and determine the case accordingly. *Richardson v. Perales,* 402 U.S. 389, 399-400 (1971)). Therefore, judicial review is limited to determining whether the Commissioner applied the correct legal standards in reaching her decision and whether there is substantial evidence in the record to support the findings. 42 U.S.C. § 405(g); *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401; *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). A reviewing court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Ehrhart v. Sec. of Health & Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992).

## II.    BACKGROUND

**A.     Plaintiff's Evidence**

Plaintiff was forty-four years old at the time of the agency's final decision (Tr. 13). She had a high school education and past relevant work as a packer, a cook, a dietary aide, and prep cook (Tr. 13). She claimed she could no longer work due to a left breast mastectomy, due to cancer, blurred vision, arthritis in her legs and hips, anemia, colon problems, and nausea (Tr. 13).

Plaintiff reported that she was able to lift and carry five pounds with her left arm and ten or 15 pounds with her right arm (Tr. 39). She could stand for about two and a half hours, and sit for one and a half hours (Tr. 40). She was able to alternate between sitting and standing positions (Tr.

40).  Plaintiff reported that her daily activities included household cooking, cleaning, and laundry (Tr. 90).  She drove a car and usually picked up her daughter after school each afternoon (Tr. 90).  She had no problems with her personal care (Tr. 90).

Plaintiff was diagnosed with cancer of the left breast on January 30, 2001 (Tr. 289-90).  A biopsy of the tumor showed a poorly differentiated malignant neoplasm or breast carcinoma (Tr. 289).  On February 8, 2001, Plaintiff underwent a total body bone-imaging scan, which showed that the cancer had not metastisized (Tr. 280).  On February 19, 2001, the claimant underwent a left-modified radical mastectomy of the left breast (Tr. 267-68).  She had no complications during surgery or recovery(Tr. 267-68).

On March 15, 2001, Dr. Murugavel Muthusamy of Cancer Health Associates began seeing the Plaintiff (Tr. 314-15).  Dr. Muthusamy diagnosed a poorly differentiated carcinoma that was estrogen negative, and determined that Plaintiff would benefit from adjuvant chemotherapy (Tr. 315).  Plaintiff underwent six cycles of chemotherapy between March 26, 2001, and July 2, 2001 (Tr. 301-07, 308-12).  In July 2001, Plaintiff reported doing well and tolerated chemotherapy without signs or symptoms of tumor recurrence (Tr. 308).  She denied any fever, chills, sweats, fatigue, weakness, appetite changes, nausea, vomiting, constipation, diarrhea, weight loss, or weight gain (Tr. 308).

Dr. Muthusamy completed a Neoplasm Report on August 13, 2001 (Tr. 331).  He stated that there was no evidence of recurrence of the cancer since surgery (Tr. 331).  He also stated that the Plaintiff was hospitalized twice due to fever and neutropenia after chemotherapy (Tr. 332).  Dr. Muthusamy opined that Plaintiff would be unable to work during her chemotherapy regimen due to the side effects of treatment (Tr. 332).  Dr. Muthusamy stated that Plaintiff's inability to work would

4

last until her complete recovery from therapy, which he expected by the end of 2001 (Tr. 332).

On April 2, 2002, Dr. Stephen Burns, Plaintiff's treating physician, referred Plaintiff to a physical therapy program to build strength and flexibility in her right knee and wrist (Tr. 371-72). Dr. Burns reported that Plaintiff had no significant neurologic deficits, her knee was stable, her ranges of knee motion were satisfactory, and she had no significant knee swelling (Tr. 371). Her hand strength was good, and she showed no significant instability or swelling of the hand (Tr. 371). Upon completion of therapy in May 2002, Plaintiff's physical therapist reported that her knee pain had decreased, and her ranges of motion and gait pattern had improved (Tr. 367). Occupational therapist Robert M. Westphal found that Plaintiff's ranges of motion and strength in her right wrist had improved with therapy that included use of heat, ice, and exercise (Tr. 369). Dr. Burns examined Plaintiff and found that her wrist and knee were better (Tr. 368). She was able to move a little better, with less tenderness, and her osteochondroma of the knee did not seem to be bothering her much (Tr. 368). Dr. Burns described Plaintiff's treatment as conservative (Tr. 368).

On June 10, 2002, Dr. Terry J. Kosinski completed a medical assessment of ability to do work-related activities (Tr. 359-62). According to Dr. Kosinski, Plaintiff could sit, stand, and walk for two hours a day (Tr. 359), and could either sit or stand for approximately eight hours per day (Tr. 359). She could lift and carry ten pounds occasionally (Tr. 359-60). Dr. Kosinski indicated that Plaintiff had moderate restrictions against unprotected heights, moving machinery, and temperature extremes (Tr. 361).

On September 10, 2002, Dr. Burns completed a medical assessment of ability to do work-related activities (Tr. 355-58). According to Dr. Burns, Plaintiff could sit for two hours a day,

5

stand for two hours a day, and walk one hour a day (Tr. 355). She could either sit or stand for approximately eight hours per day (Tr. 355). She could lift and carry ten pounds occasionally (Tr. 355-56). Dr. Burns recommended that Plaintiff avoid temperature and humidity extremes, chemicals, dust, and fumes (Tr. 357). Dr. Burns planned no further treatment (Tr. 357).

After the ALJ issued his decision, Plaintiff submitted approximately 16 pages of medical exhibits to the Appeals Council with her request for review of the ALJ's decision (Tr. 376-94). The evidence included medical records dating from October 2002 to August 2004 (Tr. 378-94). The Appeals Council concluded that the evidence submitted did not provide a basis for changing the ALJ's decision (Tr. 4-5).

On March 17, 2005, Plaintiff submitted a one-page letter to this court, with a letter attached from Vidya Kora, M.D., dated March 2, 2005.  Dr. Kora opined that Plaintiff was disabled.

**B.     Vocational Expert Evidence**

Dr. Leonard Fisher, a vocational expert ("VE"), appeared and testified at the hearing. Dr. Fisher testified that none of the Plaintiff's past work was considered sedentary, and the Plaintiff would have required no skills transferable to sedentary work (Tr. 45-46).  Dr. Fisher testified that if the Plaintiff could perform sedentary work but would have to alternate between sitting and standing and could never do either for more than two hours, and would have to avoid extremes of heat, cold, and pollutants, the remaining jobs would be limited to jobs such as surveillance security system monitor, addresser, inspector, telephone quotation clerk, and certain jobs in cashiering and that there were a significant number of jobs in the national economy that the Plaintiff could perform (Tr. 46-47).  When asked by Plaintiff's attorney to include a second hypothetical, that the person had more limited use of the right and left hands, Dr. Fisher testified that the only remaining job would be

6

surveillance monitor (Tr. 48-50). The VE identified 2,000 - 4,000 jobs that existed for a surveillance monitor (Tr. 49).

C.     **The ALJ's Decision**

The findings of the ALJ were as follows:

1.     The claimant met the nondisability requirements for a period of disability and Disability Insurance Benefits.

2.     The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.     The claimant's breast cancer is a severe impairment.

4.     This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.     The undersigned finds the claimants's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.     The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairment.

7.     The claimant has the residual functional capacity for sedentary work, with an alternating sit/stand option. She should also avoid exposure to fumes, odors, gases, and poor ventilation. She should also avoid extreme heat and cold.

8.     The claimant is unable to perform any of her past relevant work.

9.     The claimant is a "younger individual."

10.    The claimant has a "high school education."

11.    The claimant has no transferable skills from any past relevant work.

12. The claimant has the residual functional capacity to perform a significant range of sedentary work.

13. Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.27 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as a surveillance security system monitor, an addresser, an inspector, a telephone quotation clerk, a charge account clerk, and an order clerk.

14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision.

### III. DISCUSSION

"Benefits are available only to those individuals who can establish disability under the terms of the Social Security Act." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Under section 423(c)(1)(B)(1), it is well-established that to receive benefits, a disability must have begun or had its inception during the period of insured status. *Bastian v. Schwiker*, 712 F.2d 1278, 1280 (8th Cir. 1983); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir.), *cert. denied*, 444 U.S. 952 (1979). The Seventh Circuit has established that a claimant has the burden of establishing that she is disabled within the meaning of the Social Security Act on or before the date her insured status expired. *Estok*, 152 F.3d at 640; *Meredith v. Bowen*, 833 F.2d 659 (7th Cir. 1987); *Owens v. Heckler*, 770 F.2d 1276; 1280 (5th Cir. 1985); *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984); *Jeralds v. Richardson*, 445 F.2d 36, 39 (7th Cir. 1971). "The law requires that a claimant demonstrate her disability within the proscribed period of eligibility not prior to or subsequent to the

dates in question." *Jeralds*, 445 F.2d at 39. Therefore, "any condition that had its onset or became disabling after plaintiff's insured status expired may not be used as a basis for entitlement to disability benefits." *Couch v. Schweiker*, 555 F. Supp. 651, 654 (N.D. Ind.1982). Plaintiff bears the burden of showing through testimony and medical evidence supported by clinical data and laboratory diagnosis that he was disabled during the period in which he was insured. *Jeralds*, 445 F.2d at 38-39; See also *Reading v. Matthews*, 542 F.2d 993, 997 (7th Cir. 1976). The court will ordinarily reverse an ALJ's credibility determination only if it is "patently wrong." *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003).

The claimant must show that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations to the Act create a five-step inquiry in determining whether a claimant is disabled. As previously discussed, the ALJ must consider the applicant's claim in the following sequence:

> (1) whether the claimant is currently employed; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one listed by the Secretary; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing any work in the national economy. *Clifford*, 227 F.3d at 868; citing *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

"An affirmative answer leads either to the next step, or on Steps 3 and 5, to a finding that the claimant is disabled. *Clifford*, 227 F.3d at 868. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that the claimant is not disabled." *Id.* The initial burden in steps one through four is on the plaintiff; only at step five does the burden shift to the Commissioner. *Id.*

The Plaintiff disagrees with the ALJ's finding that she was not disabled. First, the Plaintiff argues that the hearing transcript contained 36 inaudible portions. Second, the Plaintiff argues that the ALJ failed to address or give any weight to her vision impairments, hand numbness, and use of a walker. Finally, the Plaintiff alleges that the VE's testimony was inconsistent with the Department of Transportation ("DOT") as it relates to the job of surveillance system monitor.

### A.    The Hearing Transcript

Plaintiff argues that the hearing transcript contains 36 inaudibles. The Plaintiff asserts that the while some of the inaudibles may be insignificant, the total number completely eliminates the opportunity to review and make argument for appeal purposes. The Plaintiff cites *Koning v. Bowen*, 675 F.Supp. 452 (N.D. Ind. 1987), in which this Court held that there were so many inaudibles (66) and phonetic spellings (7) as to not give the claimant the opportunity for a fair review. The Plaintiff argues that would be true in the present case as well. However, the Defendant argues that the phonetic spellings in the hearing do not have any significant impact on one's understanding of the testimony. Further, the Defendant argues, a good number of "inaudibles" pertain to information not at issue in Plaintiff's claim, such as the location of her high school, the requirements of her past jobs, the vocational expert's background, the region identified in the hypothetical question, or pleasantries at the end of the hearing. Finally, the Defendant asserts, most of the other inaudible portions are either preceded or followed by a repetition of the question or statement by the ALJ or Plaintiff's attorney, which essentially eliminates any question about the missing content.

In *Koning v. Bowen*, this Court applied *Ward v. Heckler*, 786 F.2d 844, 848 (8th Cir. 1986), which directed that a transcript having only occasional gaps of "a few words at a time" or "one and two times per page" should not preclude "fair review." In *Koning v. Bowen*, this Court counted an

10

average of at least five "gaps," "varying in degrees of significance" per page of the transcript. *Koning v. Bowen*, 675 F.Supp. at 457.  After thorough review of the transcript in the present case, the Court finds that the inaudibles and phonetics do not significantly impact the understanding of the testimony presented.  While the number of inaudibles and phonetics are significant, they do not rise to the level of precluding "fair review."  Unlike the transcript at issue in *Koning v. Bowen*, the transcript in the present case does not contain "gaps" "varying in degrees of significance." For example, one phonetic spelling concerns the name of Plaintiff's high school.  The other phonetic spellings concern the names of Plaintiff's physicians, which are close enough to distinguish, and do not require any clarification.  Most of the inaudibles pertain to portions not in dispute, do not require clarification, and have no impact on Plaintiff's claim.  Furthermore, most of remaining inaudible portions are either preceded or followed by a repetition of the question or statement by either the ALJ or Plaintiff's attorney, which essentially eliminates any question about the missing content.

**B.    The ALJ's Consideration of Plaintiff's Vision Impairment, Hand Numbness and Use of a Walker**

Plaintiff argues that the ALJ failed to address or give any weight to her vision impairments when the records support a vision impairment of nystagmus, in addition to blurred vision.  Plaintiff also argues that the ALJ failed to address her lymph edema in her left arm.  Finally, Plaintiff argues that the ALJ erroneously stated that there was no medical evidence that she had to use a walker.

However, the Defendant argues that the ALJ accommodated Plaintiff's allegations, to the extent they were supported by the record as a whole, including the opinions and findings of Plaintiff's treating physicians, the objective medical record, her successful treatment, and her daily activities and abilities.  Defendant further argues that the record did not support Plaintiff's allegation

11

that she needed additional restrictions due to nystagmus, hand numbness, and use of a walker. Defendant points to records Plaintiff cited in support of disability date from the period during which Plaintiff was still working.

A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2) (2000).  However, it is the ALJ that is charged with determining the ultimate issue of disability.  *See* 20 C.F.R. § 404.1527(e). The Seventh Circuit recently held that "the weight properly to be given to testimony or other evidence of a treating physician depends on circumstances." *Hofstien v. Barnhart*, — F.3d —, 2006 WL 469484 (7th Cir. Mar. 1, 2006).   Here, in reaching his residual functional capacity and credibility findings, the ALJ reasonably relied on the opinions and findings of Plaintiff's treating physicians, Dr. Muthusamy, Dr. Burns, and Dr. Kosinski.  The opinions of these physicians provide substantial support for the ALJ's finding that Plaintiff retained the capacity to perform a range of sedentary work that accommodated a sit-stand option and some environmental restrictions.  In addition, the ALJ considered Plaintiff's vision impairment, concluding that it did not limit Plaintiff's functioning because it was a condition she had since birth, it was stable, and it had not deteriorated.  The ALJ fulfilled his burden for minimal articulation as to the reasons for denying Plaintiff's claim.  The ALJ's analysis was sufficient to fully and fairly develop the record.

**C.	New Evidence**

On March 17, 2005, Plaintiff submitted a one-page letter to this Court, with a letter attached from Vidya Kora, M.D., dated March 2, 2005.  Dr. Kora opined that Plaintiff was disabled.  The Court notes the Defendant did not object to this supplemental evidence.

A reviewing court may order additional evidence to be taken before the Commissioner upon a showing that there exists "new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g); *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997).  Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding."  *Perkins v. Chater*, 107 F.3d at 1296.  New evidence is "material" if there is a "reasonable probability" that the ALJ would have reached a different conclusion had the evidence been considered.  *Johnson v. Apfel*, 191 F.3d 770, 776 (7th Cir. 1999).  Thus, new evidence is material only if it is relevant to the claimant's condition "during the relevant time period encompassed by the disability application under review."  *Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir. 1990).

Dr. Kora's letter does not meet the criteria for "new and material" evidence.  The proffered evidence does not speak to the Plaintiff's condition as it existed at or prior to the time of the administrative hearing.  Remand is appropriate only where the new evidence is "material to the claimant's condition during the relevant time period encompassed by the disability application under review."  *Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir. 1989).  Dr. Kora's letter, dated March 2, 2005, documents the Plaintiff's condition as it existed more than two years after the ALJ rendered his decision.  The Seventh Circuit has held that medical records that document a plaintiff's condition as it existed one to three years after the ALJ rendered his decision, while "new," do not constitute "material" evidence for purposes of a potential remand pursuant to 42 U.S.C. § 405(g). *See Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005). Dr. Kora's opinion, as it existed in March 2005, could not have affected the ALJ's decision rendered in February 2003.

Moreover, the Seventh Circuit suggested in *Hofstien v. Barnhart* that when evidence in

13

opposition to the treating physician's opinion is introduced, the "treating physician" rule drops out and the treating physician's evidence is just one more piece of evidence for the ALJ to weigh. *Hofstien v. Barnhart*, — F.3d —, 2006 WL 469484 (7th Cir. Mar. 1, 2006).  While Dr. Kora's opinion is in opposition to that of the Plaintiff's treating physicians, it does not constitute "material" evidence for the purposes of a potential remand and could not have affected the ALJ's decision. Therefore, the "treating physician" rule stands and the opinions of Plaintiff's treating physicians retain their original weight.

**D.     The VE's Testimony**

The Plaintiff alleges that the VE's testimony was inconsistent with the <u>Dictionary of Occupational Titles</u> ("DOT") as it relates to the job of surveillance system monitor.  The Plaintiff argues that the position of a surveillance system monitor has an SPV of 6 in the DOT's definition and requires much more skill than the Plaintiff possessed.  In addition, according to the Plaintiff, the vision requirements of that position according to the DOT are well beyond those possess by the Plaintiff.

The Defendant argues that the VE discussed the job possibilities available to a person with the same vocational factors as Plaintiff, and the jobs identified included positions as a surveillance system monitor, addresser, inspector, and clerk.  Further, Defendant argues, the vocational expert's testimony was given in response to a hypothetical question that accurately portrayed Plaintiff's impairments and vocational profile.

When asked by Plaintiff's attorney to include a second hypothetical, that the person had more limited use of the right and left hands, Dr. Fisher testified that the only remaining job would be surveillance monitor.  The ALJ reasonably credited only those restrictions supported by the

record, which the ALJ included in his hypothetical question to the VE.  The ALJ reasonably rejected those restrictions which were unsupported.  The ALJ determined the additional eye, hand, and walking limitations asserted by Plaintiff's attorney were unsupported, and, thus, Plaintiff's second hypothetical question to the VE was unsupported by the evidence.  Because the VE's testimony was given in response to a hypothetical question that accurately portrayed Plaintiff's impairments and vocational profile, the ALJ justifiably relied on the VE's conclusions, and determined that thousands of jobs, including surveillance system monitor, addresser, inspector, and clerk, accommodated Plaintiff's vocational profile and RFC restrictions.

## IV.   CONCLUSION

Based on the foregoing, the decision of the Commissioner was supported by substantial evidence and is hereby **AFFIRMED**.

**IT IS SO ORDERED.**

Date: March 15, 2006                                                  **S/ ALLEN SHARP**
                                                                                        **ALLEN SHARP, JUDGE**
                                                                                        **UNITED STATES DISTRICT COURT**